**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert G Kode, | No. CV-23-00721-PHX-SMM |
| Plaintiff, | **ORDER** |
| v. | |
| United Dental Corporation, et al., | |
| Defendants. | |

Before the Court is Defendant United Dental Corporation's Motion for Judgment on the Pleadings. (Doc. 6). The Court held oral argument on the Motion on October 20, 2023. (Doc. 15). For the following reasons, the Court grants the Motion and enters Judgment for Defendant.

**I.     BACKGROUND**

Plaintiff Robert Kode is a dentist practicing in the Phoenix metropolitan area. Plaintiff manages PB & J Dental LLC, which is a member of Sadame Management, LLC, a dental partnership organization (DPO) formed in 2010. (Id.) Defendant United Dental Corporation ("Defendant" or "UDC") is a DPO which sought to acquire the dental practices under Sadame Management's umbrella. (Doc. 1-3 at 6). Plaintiff and UDC's Executive Chairman, Dr. Ray Khouri, had mutual communications and entered into a contract—the "Introducer Agreement"—for Plaintiff to identify and introduce dental practices to UDC for UDC's acquisition consideration. (Id. at 6–7). The Introducer Agreement was prepared by UDC. (Id. at 7). Plaintiff's stated obligations under the

Introducer Agreement were to "[s]ource potential dental practice acquisitions for UDC's consideration," "[i]ntroduce such dental practices to UDC and facilitate discussions between them," "[p]romote the expansion of UDC," and "[l]iaise with the relevant dental practice owners." (Doc. 8-1 at 12). Plaintiff was to be paid a commission of 2% of the acquisition value of any completed acquisitions made pursuant to the Introducer Agreement. (Id.) The Introducer Agreement was executed on June 9, 2021. (Id., Doc. 1-3 at 7). During the period that the contract was in effect, dental practices under Sadame Management executed Letters of Intent with UDC. (Id. at 8).

On June 10, 2022, UDC sent a Termination Notice informing Plaintiff that UDC was terminating the Introducer Agreement because "UDC has decided that it will not be proceeding with any Introducer Agreements that are not with duly registered broker/dealers." (Id.) The term "broker" did not appear in the Introducer Agreement.

The following month, on July 15, 2022, UDC and Sadame Management executed an Asset Purchase and Contribution Agreement in the sum of $10,682,000.00. UDC did not the retain services of a licensed broker for the transaction.

Plaintiff filed suit in the Maricopa County Superior Court on March 27, 2023, alleging breach of contract and related claims against UDC. (Doc. 1-3 at 4–11). UDC removed the action to this Court on April 28, 2023 based on the diversity of the parties. (Doc. 1 at 2). UDC filed the Motion for Judgment on the Pleadings now before the Court on June 26, 2023. (Doc. 6). The Motion is full briefed. (Docs. 6, 8, 9).

**II.    LEGAL STANDARD**

Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, any party may, after pleadings are closed but within such time as not to delay trial, move for judgment on the pleadings. Judgment on the pleadings is appropriate when no issue of material fact is in dispute and the moving party is entitled to judgment as a matter of law. Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 978–89 (9th Cir. 1999). The Court takes all of the opposing party's allegations of fact as true, and all allegations denied by the opposing party as false. Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967).

1  "Only if it appears that, on the facts so admitted, the moving party is clearly entitled to
2  prevail can the motion be granted." Id.

3  **III.   DISCUSSION**

4  Defendant argues that Plaintiff is barred from seeking compensation under the
5  Introducer Agreement because Plaintiff is not a licensed broker. (Doc. 6 at 1). Defendant
6  argues that Arizona's broker licensing statutes make it unlawful to compensate Plaintiff
7  under the terms of the Introducer Agreement. (Id. at 2). As an initial matter, the parties
8  dispute whether the choice of law provision in the Introducer Agreement applies. As
9  such, the Court must determine whether Arizona law or Florida law applies to govern the
10 Introducer Agreement.

11 **A.  Choice of Law Provision**

12 The parties dispute whether the choice of law provision in the Introducer
13 Agreement is valid. The Introducer Agreement provides that the laws of Florida apply to
14 govern any disputes as to the contract. (Doc. 6-1 at 9). Plaintiff argues that the Court
15 should apply the laws of Florida to determine the validity of the Introducer Agreement.
16 (Doc. 8 at 1, 4–10). Defendant argues that Arizona law should be applied and the
17 Introducer Agreement is void irrespective of which state's laws are applicable.

18 In deciding whether to follow a choice of law provision, the Court looks to
19 Arizona's choice of law rules to determine which law applies to the action. See Klaxon
20 Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941) (holding that federal courts must
21 apply state conflict of laws rules). Because Arizona has adopted the conflict rules under
22 the Restatement (Second) of Conflicts, see Bryant v. Silverman, 703 P.2d 1190, 1191
23 (Ariz. 1985), the Court applies the Restatement.

24 Under the Restatement, the Court applies the law of the state chosen by the parties
25 "if the particular issue is one which the parties could have resolved by an explicit
26 provision in their agreement directed to that issue." Restatement (Second) of Conflict of
27 Laws § 187(1). "The legality and validity of a contract provision, however, cannot be
28 resolved by an explicit provision in the contract: it is a question of law." Landi v.

Arkules, 835 P.2d 458, 462 (Ariz. Ct. App. 1992), citing Restatement § 187 cmt. d. The issue presented here pertains to the validity of the Introducer Agreement, and consequently this issue cannot be resolved by way of an explicit provision contained in the contract. As such, the Court applies § 187(2) of the Restatement, which provides that a choice of law provision is valid unless either "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice," or its application "would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law" absent a valid choice of law provision. Restatement (Second) of Conflict of Laws § 187(2)(a)–(b).

The choice of law provision of the Introducer Agreement is invalid under the second consideration because Arizona has a strong public policy interest in enforcing its own real estate broker licensing requirements. Arizona's broker licensing statutes were enacted "to protect the public from 'unscrupulous and unqualified persons.'" Adams Realty Corp. v. Realty Ctr. Inv., Inc., 719 P.2d 291, 294 (Ariz. Ct. App. 1986) (quoting Pruitt v. Pavelin, 685 P.2d 1347, 1354 (Ariz. App. 1984). "The extensive statutory regulation of the activities of real estate brokers in Arizona, the comprehensive rules and regulations adopted by the real estate department, and the decisions of our courts indicate strongly that the interest of the public should be paramount." Red Carpet-Barry & Assoc., Inc. v. Apex Assoc., Inc., 635 P.2d 1224, 1227 (Ariz. Ct. App. 1981).

Plaintiff cites a Washington state court case for the proposition that Arizona's public policy interests in real estate transactions should yield to the choice of law provision contained in the Introducer Agreement. See Erwin v. Cotter Health Ctrs., 167 P.3d 1112, 1116 (Wash. 2007). The court in Erwin upheld the parties' choice of Washington law to govern broker services performed in California while acknowledging that the purpose of California's licensing statutes was to "protect the public from the perils incident to dealing with incompetent or untrustworthy real estate practitioners." Id. at 1122. The court reasoned that California courts had determined that the state's

licensing laws "should not be so literally construed as to require exact compliance 'if it would transform the statute into an unwarranted shield for the avoidance of a just obligation.'" Id., citing In re Estate of Baldwin, 34 Cal. App. 3d 596, 605, 110 Cal. Rptr. 189, 195 (1973).

The Court declines to follow the Oregon court's reasoning in Erwin because it appears to the Court that Arizona's courts have been less receptive to equitable considerations when applying the state's broker licensing laws. See, e.g., Hall v. Bowman, 357 P.2d 149, 151 (Ariz. 1960) ("[Ariz. Rev. Stat. §] 32-2152 stands as a clear warning that the courts will not be a party to the collection of fees made in violation of §§ 32-2121 and 32-2122."). Arizona courts have consistently reinforced that Arizona has a paramount interest in protecting real estate purchasers and therefore in regulating real estate brokers. The Court is not persuaded to permit parties to a contract to circumvent the state's interest in protecting buyers of Arizona businesses and Arizona real estate by electing to apply the laws of a state with no relationship to the transaction. Accordingly, the Court applies Arizona law to Plaintiff's claims.

### B. Breach of Contract

Plaintiff alleges that Defendant breached its contract with Plaintiff by failing to pay Plaintiff the commission agreed upon in the Introducer Agreement. Defendant counters that Plaintiff's claim cannot succeed because the Introducer Agreement contracts for business broker services and Plaintiff has failed to allege that he is a licensed broker in accordance with Ariz. Rev. Stat. § 32-2152. Section 32-2152(A) requires that any action for the collection of compensation for broker services "allege that the plaintiff was a qualified licensed broker or salesperson at the time the claim arose." See also Mousa v. Saba, 218 P.3d 1038, 1042 (Ariz. Ct. App. 2009) ("A person engaging in activities requiring a real estate license may file an action to recover compensation only if the complaint alleges that the person was a qualified licensed broker or salesperson at the time that the claim arose."). The plaintiff must do so before the court may hear the action. § 32-2152(A).

Prior to reaching the issue of whether Plaintiff's lack of licensure bars Plaintiff from maintaining this action, however, the Court must first decide whether UDC contracted for Plaintiff to perform broker services via the Introducer Agreement. As noted above, the term "broker" never appears in the Introducer Agreement. Instead, the Introducer Agreement lists services to be provided by Plaintiff as follows: "[s]ource potential dental practice acquisitions for UDC's consideration," "[i]ntroduce such dental practices to UDC and facilitate discussions between them," "[p]romote the expansion of UDC," and "[l]iaise with the relevant dental practice owners." (Doc. 8-1 at 12).

The activities requiring a broker's license are listed and defined at Ariz. Rev. Stat. § 32-2101. Arizona's broker licensing statutes are broad and encompass an array of conduct. See Mousa, 218 P.3d at 1054. For example, arguably the broadest—and vaguest—clause can be found at Ariz. Rev. Stat. § 32-2101(50)(i), which defines a real estate broker as one who, "for another and for compensation," "[a]ssists or directs in procuring prospects that are calculated to result in the sale, exchange, leasing or rental of real estate, businesses and business opportunities or timeshare interests." The verbs used in that subsection—*assisting* or *directing* in *procuring*—could feasibly encompass almost any manner of conduct related to the sale or purchase of real estate or businesses. The Court analyzes the services contracted for in the Introducer Agreement in the context of this clause.

The analysis begins with whether Plaintiff contracted to perform the services "for another." The Court finds that this is readily answered in the affirmative. The purpose of the Introducer Agreement was for UDC to ultimately acquire the dental practices under the umbrella of Sadame Management, and thus Plaintiff performed the services for UDC. Plaintiff has raised the argument that he performed services in part for himself because Plaintiff's dental practice was among those sold to UDC. (Doc. 8 at 12). The Court finds this argument unavailing under the plain terms of the Introducer Agreement because the stated purpose of the Agreement was UDC's acquisition of various dental practices, not Plaintiff's sale of his own practice.

The Court next considers whether Plaintiff performed the services "for compensation" and concludes that Plaintiff was promised compensation for services rendered. The Introducer Agreement specified that Plaintiff was to receive a commission of 2% of the completed acquisition value. (Doc. 8-1 at 12).

Finally, the Court must determine whether the services that Plaintiff and UDC contracted for Plaintiff to perform fall under the broker activities listed in § 32-2101(50); that is, whether Plaintiff was to "[a]ssist[] or direct[] in procuring prospects [] calculated to result in the sale, exchange, leasing or rental of real estate, businesses and business opportunities or timeshare interests." § 32-2101(50)(i). The Court finds that the services listed in the Introducer Agreement easily fall under § 32-2101(50)(i). The first listed service, to "[s]ource potential dental practice acquisitions for UDC's consideration," is virtually synonymous with "[a]ssist[ing] or direct[ing] in procuring prospects." (Doc. 8-1 at 12); § 32-2101(50)(i).

The Court finds analogous the Arizona Court of Appeal's analysis in Whitaker v. Arizona Real Estate Board, in which that court applied § 32-2101(50)(i): "It is clear that appellant's conduct falls within the statutory definition of 'real estate broker.' He assists in the procuring of prospects for 'another' and not for himself. He receives compensation from the prospects." 548 P.2d 841, 843 (Ariz. Ct. App. 1976) (holding that business of compiling available rentals into catalogue and selling catalogue to prospective tenants required broker's license). Similarly, Plaintiff assisted in procuring prospects for another —UDC—and was to receive compensation for prospects that resulted in acquisitions. That the Introducer Agreement utilizes the term "introducer" in place of "broker" does not exempt it from Arizona's statutory licensing requirements. See, e.g., Red Carpet-Barry & Assoc., Inc. v. Apex Assoc., Inc., 635 P.2d 1224, 1227 (Ariz. Ct. App. 1981) (holding that "finder's fee" contract required compliance with Arizona's broker licensing statutes.").

Plaintiff raises the argument that § 32-2101(50)(i) encompasses the sale, not the purchase, of real estate and businesses, excluding from the statute's reach broker

activities related to purchasing such real estate or businesses. This argument lacks merit. First, the purchase of a business undeniably "result[s] in the sale" of that business, which the statute plainly includes. § 32-2101(50)(i). Second, Arizona's strong public policy interests in this field do not compel the conclusion that the drafters of Arizona's statutes intended to exempt half of the parties involved in real estate or business transactions from regulation and licensing requirements.

Plaintiff has acknowledged that Plaintiff is not a licensed broker. The Court agrees with Defendant that Plaintiff's lack of licensure is fatal to Plaintiff's claim that Defendant breached the Introducer Agreement. Because the Introducer Agreement contracts for business broker services and Plaintiff has not alleged that he is a licensed broker, Plaintiff cannot prevail as a matter of law.

### C. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff claims that Defendant breached the implied covenant of good faith and fair dealing when Defendant entered into the Introducer Agreement with Plaintiff. The covenant is implied under all contracts under Arizona law. However, an enforceable contract is an essential prerequisite to a claim that a party breached the implied covenant of good faith and fair dealing. Johnson Int'l v. City of Phx. Parks & Recreation Bd., 967 P.2d 607, 615 (Ariz. Ct. App. 1998); see also Arnold & Assoc., Inc. v. Misys Healthcare Sys., 275 F. Supp. 2d 1013, 1026 (D. Ariz. 2003). Because Plaintiff is precluded from seeking enforcement of the Introducer Agreement, this claim cannot succeed as a matter of law.

### D. Equitable Remedies

Plaintiff has raised an equitable claim of unjust enrichment, or quantum meruit. Plaintiff alleges that UDC has been unjustly enriched at Plaintiff's expense because Plaintiff performed services that resulted in UDC's acquisition of dental practices under Sadame Management. Having determined that Plaintiff cannot seek enforcement of the Introducer Agreement, the Court must consider whether Plaintiff can pursue equitable remedies that may be available in the absence of an enforceable contract.

The absence of an enforceable contract does not preclude all means of recovery by a plaintiff in a breach of contract action. When a defendant has received a benefit as a result of an unenforceable contract, that defendant may be obligated "'by the ties of natural justice and equity' to make compensation for the benefits received." Murdock-Bryant Const., Inc. v. Pearson, 703 P.2d 1197, 1202 (1985). However, when assessing whether the party to a contract may pursue equitable remedies, courts have distinguished between contracts which are merely unenforceable and contracts which are illegal. See Landi v. Arkules, 835 P.2d 458, 467–68 (Ariz. Ct. App. 1992). In Arizona, equitable remedies are unavailable when a contract is illegal or void for public policy. Id. at 468 ("[E]quity will not allow defendants to obtain compensation when the services were performed under an illegal contract.").

Arizona's broker licensing statutes make it unlawful to either act as a real estate broker without licensure or to compensate an unlicensed person for performing broker services. See Ariz. Rev. Stat. § 32-2122(B) ("It is unlawful for any person . . . to engage in any business, occupation or activity [of a real estate broker] without first obtaining a license . . ."); see also Ariz. Rev. Stat. § 32-2155(C) ("It is unlawful for any person, firm or corporation . . . to pay or deliver to anyone compensation for performing any of the acts specified by this chapter, as a broker, who is not licensed at the time the service is rendered."). The criminal penalty that may be imposed on an unlicensed person who acts as a broker or salesperson, as defined in the statutes, is listed at Ariz. Rev. Stat. § 32-2165(A) ("A person who acts as a broker or salesperson within the meaning of this chapter, or who advertises in a manner that indicates that the person is licensed as a broker or salesperson, without being licensed as prescribed by this chapter is guilty of a class 6 felony."). Thus, the licensing statutes unequivocally make it illegal to perform broker services as an unlicensed person.

Because the Introducer Agreement is illegal, rather than merely unenforceable, Plaintiff is barred from recovering through equitable remedies such as unjust enrichment or quantum meruit.

Plaintiff argued at the Oral Arguments held on October 20, 2023 that Plaintiff also performed non-broker services which permit Plaintiff to pursue equitable remedies, such as unjust enrichment, notwithstanding the illegality of the Introducer Agreement. The Arizona court of appeals held in Mousa that the unlicensed plaintiff's performance of non-broker services could form the basis of an unjust enrichment claim, even when the plaintiff had unlawfully contracted at the same time to perform broker services. 328 P.3d at 1044 (affirming summary judgment on breach of contract claim but vacating judgment as to unjust enrichment claim arising from performance of non-broker services). The facts in Mousa are distinct from the facts here, however; the plaintiff in that case presented evidence that he had performed property management services, which are exempt from licensing requirements pursuant to Ariz. Rev. Stat. § 32-2121(A)(8). The Court is not persuaded that any of the services which Plaintiff performed may fall under that or any other exception in the statutes.

**E. Fraud**

Lastly, Plaintiff has raised a fraud claim against UDC. As an initial matter, this claim is not precluded under § 32-2152 due to Plaintiff's failure to allege that he is a licensed broker because it is based in tort law, not contract law. "[C]ontract law enforces the expectancy interests between contracting parties and provides redress for parties who fail to receive the benefit of their bargain . . . . Tort law, in contrast, seeks to protect the public from harm to person or property." Carstens v. City of Phx., 75 P.3d 1081, 1084 (Ariz. Ct. App. 2003). Section 32-2152 prevents an unlicensed plaintiff from bringing an action "for the collection of compensation earned" and, as such, only precludes claims based in contract law.

Arizona courts have not specifically addressed whether an unlicensed party to a broker contract can maintain a claim of fraud against the other party. Fraud in the inducement is a tort claim, not a contract claim or an equitable remedy for a breach of contract. A claim of fraud in tort seeks to recover for injuries, not the benefit of the bargain. This Court thus addresses whether Plaintiff is barred from recovery in tort as

well as recovery in contract pursuant to Arizona's broker licensing statutes.

Plaintiff argues that Arizona's broker licensing statutes do not bar Plaintiff's fraud cause of action. Defendant contends that Plaintiff is barred from bringing a claim of fraud because the Introducer Agreement is illegal rather than merely unenforceable.

This Court has held that Arizona's mortgage broker licensing statutes do not prevent an unlicensed plaintiff from bringing tort claims, including fraud. Ares Funding, LLC v. MA Maricopa, LLC, 602 F. Supp. 2d 1144 (D. Ariz. 2009). Importantly, as this Court observed in Ares Funding, Arizona's mortgage broker licensing statutes render contracts with unlicensed mortgage brokers unenforceable, not illegal. See Ariz. Rev. Stat. § 6-909(B). This Court noted that the outcome may have differed had the statutes expressly made it unlawful for an unlicensed person to act as a mortgage broker.

Unlike the mortgage broker statutes considered in that case, Arizona's real estate and business broker statutes explicitly make it unlawful for an unlicensed person to act as such. The Court finds that although Plaintiff is not prevented from bringing a fraud claim under § 32-2152, Plaintiff's claim is nevertheless barred pursuant to § 32-2122 because the Introducer Agreement is illegal. The Court is compelled to adhere to "the general rule of law that a plaintiff cannot recover where his cause of action cannot be established without showing that he has broken the law, whatever his claim in justice may be upon the defendant." Northen v. Elledge, 232 P.2d 111, 115 (Ariz. 1951).

This Court in Ares Funding also raised the concern that barring the plaintiff's fraud claim in that case would have implicated the Arizona Constitution's Anti-Abrogation Clause. 602 F. Supp. 2d at 1148. That clause provides that "[t]he right of action to recover damages for injuries shall never be abrogated." Ariz. Const. art. 18, § 6. This Court opined that "interpreting the [mortgage broker] licensing statute to abrogate recovery in fraud may be unconstitutional." Ares Funding, 602 F. Supp. 2d at 1148. However, the courts of Arizona have seldom applied the Anti-Abrogation Clause, lending little insight into how the clause should be applied by the judiciary. Moreover, the Court must endeavor to construe statutes so as to avoid rendering them unconstitutional. Hayes

v. Cont'l Ins. Co., 872 P.2d 668, 677 (Ariz. 1994). In light of the Arizona courts' steadfast adherence to the principle that the courts will not provide any form of judicial relief to parties to an illegal contract for broker services, the Court gives effect to the intent of the statutes and finds that Plaintiff cannot maintain a fraud claim against UDC.

The Court finds that Plaintiff is barred from bringing a claim of fraud under Arizona's broker licensing statutes. Because this is Plaintiff's final claim, the Court grants Defendant's Motion for Judgment on the Pleadings and enters judgment in this action for Defendant.

### IV. CONCLUSION

In consideration of the foregoing, the Court finds that the pleadings establish that Defendant is entitled to judgment as a matter of law on each of Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED granting** Defendant's Motion for Judgment on the Pleadings. (Doc. 6).

**IT IS FURTHER ORDERED directing** the Clerk of the Court to enter judgment for Defendant.

Dated this 4th day of January, 2024.

_____
Honorable Stephen M. McNamee
Senior United States District Judge